# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | CASE NO. 4:20-CR-26 |
| V. | § § | |
| VICTOR CAMACHO | § | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## MOTION TO SUPPRESS EVIDENCE

The United States of America ("Government") submits this response to the motion to suppress evidence filed by Victor Camacho ("Camacho"). (Docket Number 269). The Government respectfully requests that this Court deny Camacho's motion to suppress without a hearing because it does not present a material issue of fact. The Defendant's motion to suppress should also be denied because 1) the traffic stop was reasonably related to the circumstances justifying the stop and was not unreasonably prolonged; and 2) there was reasonable suspicion to extend the traffic stop.

## I. FACTUAL BACKGROUND

Task Force Officer Tondera of the Fort Bend County Sheriff's Office stopped Victor Camacho (hereinafter Camacho) for speeding, 74 miles per hour in a 55 mile per hour zone, at approximately 1:08 pm on December 19, 2019 as Camacho was driving southbound on US Highway 59 near Spur 10 in Beasley, Fort Bend County, Texas. After stopping the Nissan Altima, driven by Camacho, TFO Tondera, a K-9 Officer with specialized training and experience in interdiction, made contact with Camacho, and observed a female in the front passenger seat,

identified as Camacho's wife, Lucila Banda, along with a small child in the vehicle. As a K-9 Officer, TFO Tondera had his K-9 partner, Gaz with him during the entire traffic stop. TFO Tondera asked Camacho to exit the car and sit in the front seat of his patrol vehicle while he issued Camacho a written warning. TFO Tondera will state it is his common practice to ask individuals to sit in his front seat for his safety from both weapons and passing traffic on the highway.

After Camacho entered TFO Tondera's patrol car, TFO Tondera began to ask Camacho routine questions about the vehicle and his travel relating to Camacho's origin, destination, purpose and length of travel, among other things, while simultaneously running Camacho for warrant checks, driving record checks, vehicle registration, and checking the vehicle's license plate through federal data bases. When TFO Tondera asked Camacho where he was coming from and Camacho replied "Houston" TFO Tondera began to notice deviations from the baseline that had been established from the original routine questions TFO Tondera had asked. When TFO Tondera began to question further about what Camacho did in Houston, he observed clusters of problematic and possible deceptive verbal and non-verbal behavior.

In particular, when TFO Tondera asked Camacho when the last time he came to Houston was, Camacho responded "mmm, I can't remember, I mean we actually work all over the place, so, we are all over the United States." TFO Tondera then specifically asked Camacho when the last time was that Camacho came to Houston driving the same Nissan Altima. Camacho stated, "I think it was week, yeah last week." TFO Tondera noticed Camacho's behavior deviate from his baseline during these statements. Additionally, the vehicle license plate check TFO Tondera was running simultaneously indicated Camacho's vehicle had been located driving to and from Houston four previous times in the last 30 days, including on December 3rd, December 13th, and December 16th.

Camacho's initial statement about his purpose for being in Houston was to visit family. However, Camacho stated he arrived in Houston at 10 am on December 19, 2019. TFO Tondera stopped Camacho at only 1:08 pm on the same date approximately 35 miles south of Houston driving back towards Brownsville, Texas. When TFO Tondera asked Camacho again about his reason for coming to Houston, Camacho then stated he had been in Port Lavaca for a job application but they did not accept a picture of his social security number so they wanted him to go to Victoria to get a social security number again for the receipt." Camacho stated, "so they can have it again for work and drive over here to Houston to see family." TFO Tondera asked several more questions about how often he drives the Nissan Altima and whether his wife had been to Houston lately, to which he stated he "wouldn't know." When asked if there was anything illegal in his vehicle, Camacho stated no but did not make eye contact with TFO Tondera and looked at the car instead, changed the tone of his voice, and began pinching his fingers.

During the totality of TFO Tondera's questioning, based on his training and experience, he observed several deviations from his base line in regard to the origin, purpose, and length of his trip, and behaviors that were not consistent with the innocent motoring public.

At approximately eight to nine minutes into the traffic stop, TFO Tondera asked Camacho for consent to search the vehicle and Camacho declined. TFO Tondera then informed Camacho he planned to use his K-9 to conduct a search. The traffic stop was only prolonged for an additional four minutes while TFO Tondera asked the passengers, Lucila Banda and her daughter, to exit the vehicle and he prepared his dog. By thirteen minutes into the stop, TFO Tondera deployed his K-9 partner Gaz to conduct a free air sniff of the exterior of the vehicle and within less than one minute the dog came to a final response near the driver's door handle. Within a few minutes into

the search, law enforcement found a Barrett .50 caliber rifle with an obliterated serial number in the trunk of the Nissan Altima Camacho was driving.

## II. LEGAL ANALYSIS AND ARGUMENT

### A. Defendant's Motion Should be Denied Without a Hearing Because His Motion Presents No Material Issue of Fact as Required by CrLR 12.2

It is the government's position that Defendant's motion should be summarily denied without a hearing because Defendant's motion fails to present a material issue of fact and fails to set forth an issue with the particularity as required by Rule 12 of the Criminal Rule of the Local Rules for the Southern District of Texas. CrLR12.2 provides**:**

> A pretrial motion shall be in writing and state specifically the basis for the motion. The motion shall be supported by a statement of authority. It shall also be accompanied by a separate order granting the relief requested and by an averment that the movant has conferred with the respondent, but that an agreement cannot be reached on the disposition of the motion. *If the motion presents issues of fact, it shall be supported by affidavit or declaration which sets forth with particularity the material facts at issue.* An unopposed motion and its order must bear in the captions "unopposed." (emphasis added).

Defendant has failed to present, with particularity, any material facts at issue. A court need not act upon general or conclusory assertions. *United States. v. Harrelson*, 705 F.2d 733, 737-38 (5th Cir. 1983) (holding denial of a motion to suppress without a hearing was justified where defendant made only "two oblique references" to factual allegations the defendant claimed necessitated a suppression hearing, observing "hearings on motions to suppress are not discovery proceedings, but are instead designed for the presentation of evidence in support of factual allegations which, if proven, would justify the relief sought"). Pursuant to CrLR12.2, Defendant's motion should therefore be summarily denied without a hearing.

**B.     The Traffic Stop was Reasonably Related to the Circumstances Justifying the Stop and was Not Unreasonably Prolonged**

The stopping of a vehicle and detention of its occupants constitutes a seizure under the Fourth Amendment. Validity of traffic stops are analyzed under *Terry v. Ohio*, 392 U.S. 1, 21 (1968), which held that limited searches and seizures are not unreasonable when there is a reasonable and articulable suspicion that a person has committed a crime. *United States v. Santiago*, 310 F.3d 336, 340 (5th Cir.2002). The legality of police investigatory stops is a two-part test: (1) the Court must examine whether the officer's action was justified at its inception; and (2) inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop. *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir.2004) (citing *Terry*, 392 U.S. at 19-20). When conducting this two-part test, Courts are required to consider the facts and circumstances of each case, giving deference to the experience and training of the law enforcement officers, to determine whether the actions taken by the officers, including the length of detention, were reasonable under the circumstances. *Id*. at 507. The detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Id*. However, the detention may be extended if during the initial stop further reasonable suspicion is developed that is supported by articulable facts. *Id*. Law enforcement officers may ask for a driver's license and vehicle registration from the occupants for examination along with a computer check on both, and they may also inquire about the purpose, itinerary, and destination of the trip. *Id*. at 508. All of these inquiries are within the scope of investigation attendant to the stop. *Id*. "[A]n officer may also ask questions on subjects unrelated to the circumstances that caused the stop, so long as the unrelated questions do not extend the duration of the stop." *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010); *United States v. Shabazz*, 993 F.2d 431, 436-37 (5th Cir. 1993). An Officer's

questioning on subjects not related to the purpose of a routine traffic stop is not itself a Fourth Amendment violation. *Brigham*, 392 F.3d at 508. The focus of the second prong is detention, not questioning. *Id*. The Supreme Court has "long held that the 'touchstone of the Fourth Amendment is reasonableness.' Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996).

In this case, Camacho concedes in his Motion to Suppress that the first prong of the test is met. Camacho admits he was speeding and therefore, TFO Tondera was justified in pulling Camacho over. (*See* Dkt. No. 269 at 2-3).

With regards to the second prong of the test, TFO Tondera's actions were reasonably related in scope to the circumstances that justified the stop. TFO Tondera stopped Camacho as he was traveling southbound on US Highway 59. US Highway 59 is a known corridor for smugglers to travel. Since 2015, TFO Tondera has been working full time in criminal interdiction and has specialized training and experience in that area. In *Brigham*, the Fifth Circuit reiterated that the "Supreme Court has emphasized that courts must allow law enforcement officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. *Brigham*, 392 F.3d at 507 (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

Once stopped, only eight minutes elapsed from the time TFO Tondera pulled Camacho over for speeding to the time he asked Camacho for consent to search his car and Camacho declined. During those eight minutes, TFO Tondera ran warrant checks, driving record checks, registration on the vehicle, ran the vehicle license plate through a federal database, issued a warning for the speeding violation, and questioned Camacho on the origin, destination, purpose,

and length of his trip. Fifth Circuit precedent has established the actions taken by TFO Tondera are within the legitimate scope of a traffic stop. *See Brigham*, 392 F.3d at 508-509 and *see also United States v. Gonzalez*, 328 F.3d 755, 757-59 (5th Cir. 2003). There is nothing to indicate that TFO Tondera exceeded the scope of the stop. Camacho's body language, inconsistent answers to questioning about the origin, purpose, and length of his trip, coupled with the location of the stop and TFO Tondera's training and experience in interdiction led TFO Tondera to the conclusion that further investigation was required and established reasonable suspicion to extend the length of the stop.

C. **Based on Camacho's Answers to TFO Tondera's Routine Questions, there was Reasonable Suspicion to Extend the Length of the Stop**

As noted above, "[o]nce the purpose of a valid traffic stop has been completed and an officer's initial suspicions have been verified or dispelled, the detention must end *unless there is additional reasonable suspicion supported by articulable facts*." *Gonzalez*, 328 F.3d at 758 (emphasis added). If during a traffic stop additional reasonable suspicion emerges, the detention "may last as long as is reasonably necessary" to resolve the suspicion. *United States v. Fishel*, 467 F.3d 855, 856 (5th Cir. 2006). The reasonableness of the length of detention is judged by "whether police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *Brigham*, 382 F.3d at 511. "There is, however, no constitutional stopwatch on traffic stops," *id*., and "the touchstone of the Fourth Amendment analysis is reasonableness." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996).

The Supreme Court has recognized that effective crime prevention and detection requires that police officers may approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. Terry, at 392 U.S. 22-23.

7

Accordingly, a police officer may stop and briefly detain an individual for investigative purposes if he "observes unusual conduct which leads him to reasonably conclude in light of his experience that criminal activity *may* be afoot." *Terry*, 392 U.S. at 30 (emphasis added). Reasonable suspicion inquiries allow officers to consider "the totality of the circumstances–the whole picture." *United States v. Sokolow*, 490 U.S. 1, 7-8 (1989). "The Fourth Amendment requires only some minimum level of objective justification for the officers' actions–but more than a hunch–measured in light of the totality of the circumstances." *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994). The reasonable suspicion standard requires "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Rodriguez*, 564 F.3d 735, 741 (5th Cir. 2009) (quoting *United States v. Gonzalez*, 190 F.3d 668, 671 (5th Cir. 1999)).

"[R]easonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (2005); *see also Rodriguez*, 564 F.3d at 741. "The suspicion required to justify such a detention need not rise to the level of probable cause but must be based on more than an unparticularized suspicion or hunch." *United States v. Macias*, 658 F.3d 509, 520 (5th Cir. 2011). Reasonableness is analyzed under an objective standard, *see Whren v. United States*, 517 U.S. 806, 811-13 (1996), "by conducting a fact-intensive, totality-of-the-circumstances inquiry," *Rodriguez*, 564 F.3d at 741, and considering the "information available to the officer at the time of the decision to stop a person." *United States v. Silva*, 957 F.2d 157, 169 (5th Cir. 1992). Courts "must pay heed to the Supreme Court's admonition not to treat each factor in isolation . . . and instead must consider the totality of the circumstances and the collective knowledge and experience of the officer." *Macias*, 658 F.3d at 520 (citations and quotation marks omitted). The Supreme Court in *Rodriguez* clarified that

reasonable suspicion is what is needed to conduct a dog sniff during a traffic stop. *See Rodriguez vs. United States*, 575 U.S. 348 (2015).

In this case, TFO Tondera established reasonable suspicion of criminal activity before ever extending the traffic stop to conduct a dog sniff. Only after looking at the totality of the circumstances with Camacho displaying deviations from his baseline, changes in his body language, and making inconsistent statements about his prior trips to Houston did TFO Tondera decide to search Camacho's vehicle. Only after the questioning already discussed above, at approximately eight to nine minutes into the traffic stop, did TFO Tondera ask Camacho for consent to search the vehicle and Camacho declined. The traffic stop was only prolonged for an additional four minutes while TFO Tondera asked the passengers, Lucila Banda and her daughter, to exit the vehicle and he prepared his dog. A total of thirteen minutes elapsed between the time of the justified stop for speeding and when TFO Tondera deployed his K-9 partner. Within less than one minute the dog came to a final response near the driver's door handle and after a probable cause search of the vehicle, law enforcement located a Barrett .50 caliber rifle with an obliterated serial number in the trunk of the Nissan Altima.

Under the totality of the circumstances known to TFO Tondera, and in light of his training and experience, TFO Tondera had reasonable suspicion to believe that criminal activity might be afoot. Based on that reasonable suspicion, he was constitutionally permitted to extend the duration of the stop to investigate that reasonable suspicion and conduct a free air dog sniff. No constitutional violation occurred.

## III. CONCLUSION

The evidence obtained, as a result of a lawful traffic stop and search, is admissible evidence against Camacho for the reasons stated above. For the foregoing reasons, the Government requests the Court deny the Defendant's motion to suppress evidence.

Respectfully submitted,

JENNIFER B. LOWERY
ACTING UNITED STATES ATTORNEY

By: */s/ Jennifer Stabe*
Jennifer Stabe
Assistant United States Attorney
1000 Louisiana St., Suite 2300
Houston, Texas 77002
713-567-9000

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Response to Defendant's Motion to Suppress was on this the 1st day of July 2021, filed by ECF and served on: Eddie Lucio, attorney for the defendant via email.

*/s/ Jennifer Stabe*
Jennifer Stabe
Assistant United States Attorney